UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| JOHN FREEBURG, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) Case No. 4:11-cv-04035-SLD-JEH |
| DEERE & COMPANY, a Corporation | ) |
| a/k/a JOHN DEERE COMPANY, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Plaintiff John Freeburg filed this suit against his former employer, Defendant Deere & Company, also known as John Deere Company, ("Deere"), for alleged violations of the Family and Medical Leave Act ("FMLA") and for state law claims of promissory estoppel and breach of contract. Before the Court are Deere's Motion for Summary Judgment, ECF No. 22, and Freeburg's Motion for Partial Summary Judgment, ECF No. 24. For the reasons set forth below, both motions are DENIED. All requests for oral argument are also DENIED.

## BACKGROUND[1]

Deere hired Freeburg on October 13, 2003. On January 5, 2009, Freeburg's physician, Dr. John Lanciloti, provided a Certification of Health Care Provider to enable Freeburg to take FMLA leave. The Certification states that Freeburg suffers from chronic fatigue syndrome and insomnia, which are categorized on the Certification as chronic serious health conditions. Mem. in Supp. Mot. Summ. J. Ex. G, ECF No. 23-7. In answer to the question, "Will it be necessary for the employee

---

[1] Unless otherwise specified, all facts are taken from the Undisputed Material or Undisputed Immaterial facts sections of the various memoranda presented in support and in response to the motions for summary judgment.

1

to take work only intermittently . . . ? If yes, give the probable duration:" the Certification states, "Pt desires to continue with present employment; may a [sic] time depending on diagnosis require medical treatment; diagnostic testing; office visits; unknown[.]" *Id.* at 1. In response to the directive, "If the condition is a chronic condition . . . state whether the patient is presently incapacitated and the likely duration and frequency of episodes of incapacity:" the Certification states, "Pt is not incapacitated—he is willing to work and function if any flare ups of chronic condition arises he will be seen at Dr. office visit and treated as needed[.]" *Id.* In answer to the question, "[i]f medical leave is required for the employee's absence from work because of the employee's own condition (including absences due to pregnancy or a chronic condition), is the employee unable to perform work of any kind?" the Certification states, "Once again the pt is willing and desires to work; if at any future time unusual symptoms arise he will be medically evaluated." Plaintiff requested FMLA leave from Deere to begin on January 6, 2009. Deere granted intermittent FMLA leave to Freeburg.

The parties agree that "[i]t was Deere's policy that when an employee took FMLA leave for a serious health condition which caused the employee to use FMLA leave on an intermittent basis, the employee must present a doctor's note covering all the days of the absence when the employee returns to work." Mem. in Resp. Mot. Summ. J. 7, ECF No. 27; Pl.'s Mem. in Supp. Mot. Partial Summ. J. 3–4, ECF No. 25; Def.'s Resp. Mot. Partial Summ. J. 2, ECF No. 37. The parties dispute whether Freeburg was aware of this policy. Reply to Resp. Mot. Partial Summ. J. 3, ECF No. 38. As of January 19, 2012, Deere's website stated: "To apply for FMLA you must contact Disability Services and have the required Department of Labor and Health Care Certification form completed by your doctor and returned to Disability Services. FMLA approval is based on the employee

2

meeting eligibility and qualifying condition requirements. FMLA is an unpaid benefit." Mem. in Supp. Mot. Partial Summ. J. Ex. G, ECF No. 34.

As a condition of employment, Deere employees are required to conduct themselves "with reasonable and proper regard for the welfare and rights of other employees and the Company's interests." Mem. in Supp. Mot. Summ. J. Ex. D, ECF No. 23-4. To that end, Deere provides written Rules of Conduct to its employees, which consists of a non-exclusive list of "some representative examples of unacceptable conduct." *Id.* The thirteenth example of "unacceptable conduct" is "[b]eing absent or late for work without reasonable cause." *Id.* As a member of the United Auto Workers ("UAW"), Freeburg was also responsible for following the terms of the agreement between UAW and Deere ("Agreement"). Article 14, section 13 of the Agreement provides that Deere may terminate an employee who "remain[s] away from work for three (3) consecutive working days without a satisfactory reason." *Id.* Ex. C, ECF No. 23-3.

On January 20, 2009, Gerald Roman, the Industrial Relations Representative for Deere, sent Freeburg a three-day quit letter informing him that his employment had been suspended because he had been absent for three consecutive work days without a satisfactory reason. *Id.* Ex. I, ECF No. 23-9. When Freeburg returned to work on January 22, 2009, he provided a doctor's note explaining that he had been under a physician's care from January 14 to January 22, 2009, and certifying that he could return to work with a limitation to light duty for four weeks. *Id.* Ex. J, ECF No. 23-10. Freeburg provided three additional doctor's notes, each titled "Certificate to Return to Work/School," spanning January 23 through March 3, 2009—with a notation on February 17 that Freeburg could "[r]eturn to regular duty work"—and March 19 through April 6, 2009. *Id.* Exs. K & L, ECF No. 23-11 & 23-12. On April 21, 2009, Freeburg was sent a second three-day quit letter.

3

*Id.* Ex. M, ECF No. 23-13. When Freeburg returned to work, he provided another doctor's note covering March 18 through April 22, 2009, and limiting "work day to 8 hours for 2 weeks then may increase by 1 hr every 2 weeks up to 12 hrs per day." *Id.* Ex. N, ECF No. 23-14.

On May 4, 2009, Roman told Freeburg that he had 120 FMLA hours remaining. May 5, 2009, is the last day Freeburg reported to work. Neither party has provided a complete record of the days Freeburg was absent from work between January 6 and May 5, 2009; an Employee Absence Inquiry provided by Deere shows Freeburg was on a leave of absence due to FMLA for April 20–24, 27–30, and May 1, that he was tardy on May 4, and that he left early on May 5. *Id.* Ex. O, ECF No. 23-15. On May 7, 2009, a work force planning coordinator for Deere, Diane Hoffman, realized that Freeburg's FMLA hours had been miscalculated, and that as of May 4, 2009, Freeburg only had 11 FMLA hours remaining. After learning of the miscalculation, Roman attempted to call Freeburg on May 8 but was unable to reach him. Freeburg received a telephone message from Roman on May 13, 2009, alerting him that he had no remaining FMLA leave available. On May 15, 2009, Roman sent Freeburg a third three-day quit letter. *Id.* Ex. P, ECF No. 23-16. Freeburg never provided a doctor's note covering May 6–8 or May 11–12, 2009. Freeburg called Deere's security office per Deere policy to advise them that he was too ill to work and that he was taking an FMLA day on May 6–8, and May 11–12. Roman sent Freeburg a letter on May 22, 2009, informing him that his "employment relationship at John Deere has been terminated effective 22 May 2009." On June 22, 2009, a Reinstatement Conference was held, and Freeburg's employment was terminated effective as of that date. *Id.* Ex. W, ECF No. 23-23. Freeburg was informed that he was terminated because "he had not provided the Company with a satisfactory reason for his absences." *Id.* Ex. W. at 2. The parties agree that the relevant absences are May 6, 7, 8, 11, and 12, 2009.

4

Freeburg alleges four causes of action related to the termination of his employment. Specifically, he claims Deere interfered with his FMLA leave when it impermissibly required verifying notes from his doctor. Second, he claims that his termination was retaliation for exercising his rights under the FMLA. Third, he alleges that his reliance on Deere's statement that he was entitled to FMLA leave gives rise to promissory estoppel claim. Freeburg's fourth claim is for breach of contract.

## DISCUSSION

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On a motion for summary judgment, the Court will construe all facts and draw all reasonable inferences in favor of the nonmoving party. *See Srail v. Vill. of Lisle, Ill.*, 588 F.3d 940, 948 (7th Cir. 2009). Summary judgment is the "put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003) (internal quotation marks omitted). A court should grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). At the summary judgment stage, the judge's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. *Patel v. Allstate Ins. Co.*, 105 F.3d 365, 370 (7th Cir. 1997). There can be no genuine issue as to any material fact when a party "fails to make a showing sufficient to establish the existence of

an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## I. Deere's Motion for Summary Judgment

Deere argues that all of Freeburg's claims "are based on his alleged entitlement to FMLA leave," and because he was not, in fact, entitled to additional FMLA leave after he used up his hours, all of his claims fail. Mem. in Supp. Mot. Summ. J. 7. Even if he were entitled to additional leave, Deere argues that Freeburg's failure to comply with Deere's "usual and customary notice and procedural requirements for requesting leave" justified Deere in denying him FMLA-protected leave. *Id.* Therefore, according to Deere, Freeburg's termination was "unrelated to his FMLA leave," and was simply the consequence of his unexcused absences. *Id.* Those are the only arguments advanced by Deere, even though the memorandum sets forth the legal framework for Freeburg's two FMLA claims (interference and retaliation)—the promissory estoppel and breach of contract claims are not specifically argued. The Court limits its analysis to the issues raised and argued by the parties. *See United States v. Holm*, 326 F.3d 872, 877 (7th Cir. 2003) ( "[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived. It is not the obligation of this court to research and construct the legal arguments open to parties, especially when they are represented by counsel." (citations omitted)).

The FMLA entitles an eligible employee suffering from a serious health condition that renders him unable to perform the functions of his position to twelve workweeks of leave during each twelve-month period. 29 U.S.C. § 2612(a)(1)(D). In addition to providing for leave time, the FMLA prohibits employers from interfering with or discriminating against an employee who attempts to exercise his rights under the FMLA. 29 U.S.C. § 2615(a)(1)–(2). To prevail on his

interference claim, Freeburg must prove that: (1) he was eligible for FMLA protection; (2) Deere was covered by the FMLA; (3) Freeburg was entitled to FMLA leave; (4) he provided sufficient notice of his intent to take leave; and (5) Deere denied him benefits to which he was entitled. *Nicholson v. Pulte Homes Corp.*, 690 F.3d 819, 825 (7th Cir. 2012).

The third element, whether Freeburg was entitled to FMLA leave, is the only one in dispute in Deere's Motion for Summary Judgment—as described above, Deere treats this as a threshold issue for all of Freeburg's claims. Freeburg does not dispute that he only had 11 hours of leave remaining as of May 4, 2009. Rather, he asserts that Deere should be equitably estopped from arguing that Freeburg was not entitled to FMLA leave for the days he was absent because of Deere's "express and undisputed misrepresentation to Freeburg that he had 120 hours remaining." Mem. in Resp. Mot. Summ. J. 1, ECF No. 27. The elements of equitable estoppel under federal law include (1) a definite misrepresentation, (2) reasonable reliance, and (3) detriment to the party who acted in reasonable reliance on the misrepresentation. *Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc.*, 467 U.S. 51, 59 (1984) (citing Restatement (Second) of Torts § 894(1) (1979)). The Seventh Circuit has not definitively endorsed the use of equitable estoppel in this specific circumstance. In *Dormeyer v. Comerica Bank-Illinois*, 223 F.3d 579, 582 (7th Cir. 2000), the Court suggested equitable estoppel might, "in an appropriate case," be applied to block the assertion of an available statutory defense in an FMLA action: "[A]n employer who by his silence misled an employee concerning the employee's entitlement to family leave might, if the employee reasonably relied and was harmed as a result, be estopped to plead the defense of ineligibility to the employee's claim to entitlement to family leave." But *Dormeyer* was not such a case, and the Seventh Circuit has not yet

"take[n] up where *Dormeyer* left off." *Peters v. Gilead Sciences, Inc.*, 533 F.3d 594, 599 (7th Cir. 2008).

The *Peters* Court noted, however, that other circuits have recognized the availability of equitable estoppel in the FMLA context. *Id.* at 599 n.6 (citing, among other cases, *Duty v. Norton-Alcoa Proppants*, 293 F.3d 481, 493–94 (8th Cir. 2002)). *Duty*, an Eighth Circuit case that has been mentioned in Seventh Circuit opinions—but neither approved nor condemned therein—involved an employer's letter to an employee informing him that his entire thirty-four-week sick leave qualified under the FMLA. There, the district court estopped the employer from claiming that the employee's leave was confined to the twelve weeks dictated by the FMLA, and the appellate court affirmed.

Here, construing all facts and drawing all reasonable inferences in Freeburg's favor, as is required since he is the nonmoving party, the Court finds that there is a genuine issue for trial as to whether Freeburg was entitled to FMLA leave based on a theory of equitable estoppel. *See Srail*, 588 F.3d at 948. Based on the evidence presented, a trier of fact could reasonably find that even though Freeburg had used up all of his FMLA leave, Deere misrepresented the number of FMLA hours Freeburg had as of May 4, 2009; Freeburg reasonably relied on that representation; and that, if he did not know Deere would require a doctor's note, he was harmed by that reliance. *See Heckler*, 467 U.S. at 59. Therefore, the Court cannot conclude that Deere is entitled to judgment as a matter of law on the issue of whether Freeburg was entitled to FMLA leave for May 6, 7, 8, 11, and 12, 2009.

Deere argues in the alternative that it was justified in denying Freeburg FMLA leave for those dates because he failed to provide doctor's notes covering each day. According to Deere, this policy was its "usual and customary notice and procedural requirements for requesting leave." 29 CFR

8

§§ 825.302(d) and 825.303(c). The parties agree that "[i]t was Deere's policy that when an employee took FMLA leave for a serious health condition which caused the employee to use FMLA leave on an intermittent basis, the employee must present a doctor's note covering all the days of the absence when the employee returns to work." Mem. in Resp. Mot. Summ. J. 7, ECF No. 27; Pl.'s Mem. in Supp. Mot. Partial Summ. J. 3–4, ECF No. 25; Def.'s Resp. Mot. Partial Summ. J. 2, ECF No. 37. Deere does not establish as a matter of law that this policy constitutes a "usual and customary notice and procedural requirement[] for requesting leave." *See* 29 CFR §§ 825.302(d) and 825.303(c). Presenting a doctor's note after returning from a leave of absence does not logically seem to qualify as a notice or procedural requirement for *requesting* leave. Rather, the Court agrees with a Northern District of Illinois case which found that the goal of a doctor's note policy is to verify that a particular absence is FMLA-related. *See Jackson v. Jernberg Indus., Inc.*, 677 F. Supp. 2d 1042, 1050 (N.D. Ill. 2010).[2] Deere does not offer any authority to the contrary. Therefore, the Court concludes that Deere has not shown that there is no genuine dispute as to whether its policy is a "usual and customary" requirement, so Deere is not entitled to judgment as a matter of law on that issue. *See* 29 CFR §§ 825.302(d) and 825.303(c); Fed. R. Civ. P. 56(a). Consequently, the Court denies Deere's motion for summary judgment in its entirety.

## II. Freeburg's Motion for Partial Summary Judgment

Freeburg moves for summary judgment on Count III of his complaint, which alleges that Deere's statement to Freeburg that he had 120 remaining hours of FMLA leave gives rise to a promissory estoppel claim. Deere responds that summary judgment should be denied because

---

[2]The *Jackson* court found that Jernberg's doctor's note policy impermissibly interfered with its employees' ability to take FMLA leave. *Id.* at 1051–52. Freeburg urges this Court to reach the same conclusion, but it is not necessary to do so in order to deny Deere's motion for summary judgment.

9

Freeburg failed to provide a doctor's note even though "he had done so on numerous occasions in the past." Def.'s Resp. Mot. Partial Summ. J. 5, ECF No. 37. The fact that Freeburg had previously supplied a doctor's note to cover some FMLA absences creates a genuine issue for trial for both the third and fourth elements of his promissory estoppel claim.

Under Illinois law, the elements of a promissory estoppel claim are: "(1) defendant made an unambiguous promise to plaintiff, (2) plaintiff relied on such promise, (3) plaintiff's reliance was expected and foreseeable by defendants, and (4) plaintiff relied on the promise to its detriment." *Newton Tractor Sales, Inc. v. Kubota Tractor Corp.*, 906 N.E.2d 520, 523–24 (Ill. 2009). Deere's position is that if Freeburg had "provided a physician's excuse for all of his May 2009 absences, his employment would have been [] continued." Mem. in Supp. Mot. Summ. J. 9, ECF No. 23. It is undisputed that Freeburg secured a doctor's note to cover his absences from April 20 to 22, 2009, and that these absences are coded as leaves of absence due to FMLA on Deere's Employee Absence Inquiry for Freeburg. The record does not establish what percentage of Freeburg's FMLA absences were covered by a doctor's note. Nevertheless, construing all facts and drawing all reasonable inferences in Deere's favor, a trier of fact could reasonably find that Deere expected doctor's note coverage for Freeburg's FMLA absences. Therefore, even if it was foreseeable to Deere under the third element that Freeburg would rely on its representation that he had 120 hours of leave remaining, it was not foreseeable that Freeburg would, contrary to (at least) occasional past practice, fail to secure a doctor's note for May 6, 7, 8, 11, and 12, 2009. Similarly, under the fourth element, if the reason Freeburg was fired was his failure to supply a doctor's note, a trier of fact could reasonably find that the detriment Freeburg suffered was not caused by his reliance on Deere's statement. The Court concludes that Freeburg has not shown that there is no genuine issue as to the

third and fourth elements of his promissory estoppel claim; consequently, he is not entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a).

**CONCLUSION**

For all of the foregoing reasons, the Court DENIES Deere's Motion for Summary Judgment, ECF No. 22, and DENIES Freeburg's Motion for Partial Summary Judgment, ECF No. 24.  Deere's Motion for Extension of Time to File, ECF No. 36, is MOOT.


Entered this 27th day of March, 2014.

                                                                       s/Sara Darrow
                                                              SARA DARROW
                                        UNITED STATES DISTRICT JUDGE